Packel, Appellant, *v.* McCarthy et al.

Argued October 15, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Oscar Rosenbaum*, for appellant.

*Edmund W. Kirby*, for appellee.

OPINION BY BALDRIGE, J., January 31, 1936:

Hymen Packel, the appellant, under a bailment contract, leased to Helen McCarthy, wife of James McCarthy, and her mother, Julia Fulbruka, certain house-

hold furniture which was delivered to the McCarthy home. Upon default by the lessees, the lessor, in accordance with the terms of the lease, entered judgment, and caused to be issued a writ of fi. fa. against Julia Fulbruka. Mrs. McCarthy had died in the meantime, but apparently no suggestion of her death was made of record. The judgment was opened by the lower court upon petition alleging that the plaintiff had entered into a novation contract providing for the substitution of James McCarthy as a new debtor in lieu of the former one.

The question before us is whether or not the evidence was sufficient to support the alleged contract.

The burden was on Mrs. Fulbruka, the petitioner, to clearly establish the novation: McCartney v. Kipp, 171 Pa. 644, 33 A. 233. It is not necessary, however, that such a contract be shown by express terms; it may be implied from facts, circumstances, and conduct attending the transaction (Robbins et al. v. Robinson et al., 176 Pa. 341, 35 A. 337); and it is not required to be in writing or in any particular form, even though the original agreement was evidenced by a written document: 46 C. J. 583, §17.

At the trial it was shown that James McCarthy and Adele Firth, Mrs. Fulbruka's daughter, called at the plaintiff's house after the levy was made, in an endeavor to adjust the indebtedness, when the plaintiff asked them to meet him the next day to make a "settlement." In accordance with his suggestion, a meeting was held, and an agreement was concluded, providing for the acceptance of the new debtor and a reduction of the debt from $324.13 to $200.

The daughter's testimony, in part, is as follows:

"Q. Will you tell us just what occurred at that time between Mr. Packel and Mr. McCarthy and yourself? A. ...... Mr. McCarthy asked him whether he would make a settlement. He said yes, it would be all right.

They made a settlement that he was to pay— Q. Who do you mean 'they'? A. Mr. McCarthy and Mr. Packel made a settlement. Q. What was the settlement? A. He was to pay $25 down and $3 a week for a certain length of time until he paid it. After that he asked Mr. Packel if that would lift the levy from my mother. He said yes, it would; he would see his lawyer the next day and he would have it lifted." Cross-examination. "Q. But there is nothing in there wherein your mother is to be relieved of this obligation, is that correct? A. No, only we had taken Mr. Packel's word, and I was a witness. Q. There is nothing in this writing that relieved your mother? A. Yes, there is Mr. Packel's signature, and his agreement with Mr. McCarthy."

McCarthy stated that he told Packel he would assume responsibility for the debt that was due him; that Packel, after inquiring of him as to his financial circumstances and the business in which he was engaged, agreed to "lift the levy on my mother-in-law's goods provided I pay him $25 down and agree to pay him $3 a week" on the balance. In cross-examination he said: "The man took my money with the understanding my mother-in-law would be released." The plaintiff admitted that he had reduced the amount of his claim to $200, had received the $25, and had accepted installments from McCarthy; but he denied that he had agreed to "release" the original debtor. The plaintiff's reduction of the amount due him tends to indicate that he was moved by a consideration which he evidently concluded was to his advantage. While he did not specifically consent to release or discharge Mrs. Fulbruka, we must take into consideration that these people were not learned in the law and did not use legal terminology with entire precision to express their meaning. It was only after McCarthy's default, however, that the plaintiff took further steps on the judgment he had by virtue of the original obligation.

Taking into consideration all the facts and circumstances, we think it could be fairly inferred that the parties came to an agreement which contemplated the discharge of Mrs. Fulbruka from further liability and the acceptance by the plaintiff of James McCarthy as his debtor.

The failure of Mrs. Fulbruka to testify at the trial has no bearing on this case. She did not have personal knowledge of the facts, as she was not present when the alleged agreement was entered into between McCarthy and the plaintiff. Her presence was not necessary to make the new contract binding. It is stated in black letters in the Restatement of the Law of Contracts, §427: "Where a creditor by a contract with a third person agrees to the immediate discharge of the original debtor, in consideration of a promise by the third person, made either to the creditor or to another, to render the performance for which that debtor was previously bound or some other performance, there is a novation discharging the original debtor and giving the promisee a new right."

The appellant complains of the court's refusal to permit him to make an oral argument in support of his motions for a judgment n. o. v. and a new trial. In the two very recent cases of Babis v. N. Y. Extract Co., Inc., 120 Pa. Superior Ct. 73, 181 A. 846 and Trustees of Bryn Mawr College v. Gold B. & L. Assn., 120 Pa. Superior Ct. 246, 182 A. 98, we stated that we would not interfere with the refusal of the municipal court to grant oral arguments unless the court's action was shown to have been so unreasonable as to amount to an abuse of discretion. We are not convinced that the court's action was so prejudicial to the appellant as to justify a reversal on that ground; nor do we find, after due consideration, any sufficient reason for granting a new trial.

A study of the record leads us to the conclusion that

there was evidence sufficient to raise an issue of fact as to the alleged novation for the determination of the learned judge below, sitting without a jury.

Judgment affirmed.