## Frantz *v.* Hays Coal Company, Appellant.

Argued April 11, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*William A. Meyer*, with him *Edward T. Tait* and *Kountz, Fry & Meyer*, for appellant.

*Samuel J. Feigus*, for appellee.

OPINION BY ROSS, J., July 19, 1951:

This is an appeal by the defendant in an assumpsit action from the entry of judgment for the plaintiff on the pleadings.

Summary judgment will be entered only in a clear case and any doubt should be resolved against the entry of such judgment. *National Cash Register Co. v. Ansell*, 125 Pa. Superior Ct. 309, 189 A. 738; *Roth v. Golden Slipper R. & C. Inc.*, 167 Pa. Superior Ct. 558, 76 A. 2d 475. In our opinion, this is such clear case, and the judgment of the learned court below will be affirmed.

The case involves the interpretation of a written contract under the terms of which the plaintiff was employed by the defendant, the *owner*, under lease, of certain coal land situate in Georges Township, Fayette County, to strip; remove and deliver to defendant's

tipple the coal of defendant, for which the defendant was to pay the plaintiff $3 per ton. The plaintiff agreed to indemnify and save harmless the defendant against any claim or claims or loss or obligation of whatsoever manner from any operation of the contractor, and also agreed to carry workmen's compensation on his employes, to comply with all state or federal laws relating and providing for all taxes, including old age, employment and other forms of social security and to keep sufficient funds available for payment of all insurance premiums and said taxes. He further agreed to comply with all obligations, liabilities and requirements imposed on either the contractor or the defendant company by the Pennsylvania Bituminous Coal Open Pit Mining Conservation Act, and to the withholding by the defendant company of ten cents per ton as a guarantee for the covenants herein made, which withheld amount was *not to be paid to plaintiff* until a complete release and discharge of all liability imposed under the Bituminous Coal Open Pit Mining Conservation Act had been received by the defendant. On October 27, 1948, the plaintiff was notified by the defendant company that it had paid $1,424.08 out of the fund withheld to the United Mine Workers Welfare and Retirement Fund. This suit was brought by the contractor (plaintiff) to recover from the producer (defendant) this amount withheld by the defendant from monies due the contractor and paid into the Welfare and Pension Fund.

The contract involved in this case differs in no material respect from the contract we construed in *Davis v. Wilson,* 166 Pa. Superior Ct. 462, 72 A. 2d 148. It, as in the *Davis* case, involves the liability—as between the parties—for the payment into the United Mine Workers Pension and Retirement Fund of a royalty on each ton of coal produced. The question,

as in the *Davis* case, is: As between the producer of coal and the one who, as an independent contractor, mines and loads the coal, which is liable for the payment of this royalty where the contract prepared by the producer does not specifically or by implication impose this liability upon the contractor?

This case is controlled by *Davis v. Wilson,* supra. What we said there at pages 465-466 applies with equal force to this appeal: "The question is whether under this contract the plaintiff or the defendant—as between themselves—became obligated to pay the stipulated five cents a ton royalty as provided in the Krug-Lewis Agreement. This royalty is a production cost, it is imposed on coal produced. . . . In the contract, the plaintiff was obligated to pay the wages of the employes, carry and, of course, pay for Workmen's Compensation insurance on them, and pay the Social Security and Unemployment Compensation taxes. These, also, are production costs and they are specifically designated. It seems logical that if the parties intended that the additional production cost—royalty welfare payments—should be an obligation of the plaintiff, the parties would have so stipulated. The contract involved in this action was prepared by the defendant. . . . The defendant in drawing the contract could have protected himself by inserting in it a provision that the plaintiff should pay this additional production cost. He chose not to do so and, therefore, presumably intended to assume that cost himself. This interpretation of the contract is strengthened by the well established principle that in case of doubt or ambiguity, a written contract should be interpreted against the party who has drawn it. Monessen Bank Mortgage Pool Case, 350 Pa. 125, 38 A. 2d 15; Alcorn Combustion Co. v. Kellogg Co., 311 Pa. 270, 166 A. 862. "

Judgment affirmed.